NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTOINE MCRAE,

　　　　　　　　　　Plaintiff,

　　v.

CITY OF NUTLEY, NUTLEY POLICE
DEPARTMENT, ANDREW BASSETT, ISAAH
CARDINALE, and DAVID STRUS,

　　　　　　　　　　Defendants.

**OPINION**

Cv. No. 12-6011

**Walls, Senior District Judge**

Plaintiff Antoine McRae claims that his arrest by the Nutley Police Department for violation of a temporary restraining order ("TRO") was unlawful because he was not served with the TRO and seeks relief under 42 U.S.C. § 1983. Defendants the Township of Nutley,[1] the Nutley Police Department, Andrew Bassett, Isaah Cardinale, and David Strus all move for summary judgment under Federal Rule of Civil Procedure 56. The Court decides this motion without oral argument. Fed. R. Civ. P. 78. The motion is granted with respect to Plaintiff's claims against the Township of Nutley, Nutley Police Department, Cardinale, and Strus and Plaintiff's Fourteenth Amendment claim against Defendant Bassett, and it is denied with respect to Plaintiff's Fourth Amendment claim against Defendant Bassett.

---

[1] Plaintiff refers to the Defendant as the "City of Nutley" in his amended complaint, ECF No. 6, and the case is captioned "*McRae v. City of Nutley, et al*," but the entity is actually the *Township* of Nutley and is referred to as such in Defendants' motion for summary judgment, ECF No. 41, and Plaintiff's opposition, ECF No. 42. The Court will refer to the Defendant as the "Township of Nutley" in this opinion.

NOT FOR PUBLICATION

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are uncontested except where noted. On March 7, 2009, a TRO was issued against Plaintiff McRae in reference to a domestic violence incident (the "2009 TRO"). Am. Compl., ECF No. 6 ¶ 9; Def. Statement of Material Facts not in Dispute, ECF No. 41 at 5; P. Counter Statement of Material Facts not in Dispute, ECF No. 42-1 at 3.  Sergeant Tiene of the Nutley Police Department certified that he served Plaintiff McRae with the 2009 TRO on April 8, 2009, but the TRO does not bear McRae's signature acknowledging receipt. Def. Mot. Summ. J, ECF No. 41 – Ex. C. The parties disagree about a significant fact: Plaintiff McRae alleges that he was not served with the 2009 TRO until over two years later, ECF No. 42-1 at 3, but Defendants claim that Sergeant Tiene *did* serve McRae with the TRO but failed to obtain his signature. ECF No. 41 at 5-6. The criminal charges arising out of the March 7, 2009 incident were ultimately dismissed. *Id.* at 6; ECF No. 42-1 at 4.

On August 5, 2011, the Nutley Police responded to another domestic violence incident involving Plaintiff McRae and the same complainant. ECF No. 41 at 6; ECF No. 42-1 at 4. Defendant Cardinale, an officer for the Nutley Police Department, advised the complainant to go to Essex County Superior Court, Chancery Division, Family Part to seek a restraining order, where she was informed that a TRO was already in effect against McRae. ECF No. 41 Ex. K – Deposition transcript of Officer Isaah Cardinale 16:1-18, 23:4-24:4; Plaintiff Opp. Mot. Summary Judgment Ex. H – Deposition transcript of Officer Isaah Cardinale, ECF No. 43 16:1-17. The complainant returned to the Nutley Police Department and informed Defendant Cardinale of the existing TRO. Cardinale then asked another Nutley police officer, not named as a party in this action, to check a computer system and a "book" of TROs kept by the Nutley Police Department, and the officer confirmed to Defendant Cardinale that the 2009 TRO was in

2

NOT FOR PUBLICATION

effect against Plaintiff McRae. ECF No. 41 Ex. K 23:4-25:6; ECF No. 43 23:4-25:6. Defendant

Cardinale then obtained an arrest warrant for McRae's alleged violation of the 2009 TRO based

on the August 5, 2011 incident. ECF No. 41 at 6; ECF No. 42-1 at 4. That same day, Defendant

Officer Strus, also of the Nutley Police Department, faxed a copy of the warrant to the Linden

Police Department and Jersey City Police Department, sent a Speedy Bail Request to the Essex

County Sherriff's Office, and placed all "related documents and information" into an evidence

bag. ECF No. 41 Ex. M – Ptlm. David Strus Supplemental Investigation Report.

       According to Plaintiff McRae, he was served with the 2009 TRO on August 10, 2011.

ECF No. 42-1 at 4. Later that day, McRae went to the Nutley Police Department headquarters to

discuss the TRO and was arrested by Defendant Officer Bassett for violation of the TRO. ECF

No. 41 at 6; ECF No. 42-1 at 4. Plaintiff alleges, and Defendants deny, that he presented

Defendant Bassett with a copy of the 2009 TRO demonstrating that he was first served on

August 10, 2011, but that Defendant Basset refused to review the copy. ECF No. 42-1 at 4; Def.

Rule 56-1 Response to Plaintiff's Supplemental Statement of Disputed Material Fact, ECF No.

53 at 16. The criminal charges based on the TRO violation were subsequently dropped. ECF No.

41-1 at 4.

       On August 8, 2012, Plaintiff McRae filed a complaint under 42 U.S.C. § 1983 against the

Township of Nutley, Nutley Police Department, Andrew Bassett, Isaah Cardinale, David Strus,

and Municipal Prosecutor ("John Doe") in the Superior Court of Hudson County, alleging that

the Defendants violated his right under the Fourth Amendment of the United States Constitution

to be free from unreasonable arrest and his right under the Fourteenth Amendment to due process

of law by arresting him without probable cause. The complaint also alleged that the arrest was

the result of either an improper policy or custom of the Defendants or a failure to train or

3

NOT FOR PUBLICATION

improper training of the Defendant police officers. Compl., Notice of Removal Ex. A., ECF No.

1 ¶ 13-14.

Defendants filed a notice of removal on the grounds that the complaint alleged damages

subject to 42 U.S.C. § 1983, and the matter was removed to this Court in September 2012. ECF

No. 1. Plaintiff McRae filed an amended complaint on December 17, 2012 removing Municipal

Prosecutor ("John Doe") as a defendant and adding the County of Essex (Essex Correctional

Facility) as an additional party for allegedly violating McRae's constitutional rights while he was

detained after his arrest. ECF No. 6. Defendant County of Essex filed a motion to dismiss in lieu

of answer on January 15, 2013, ECF No. 10, Plaintiff McRae filed an opposition brief on

February 5 2013, ECF No. 12, and Defendant County of Essex filed a reply brief on February 7,

2013. On April 2, 2013, the Court granted the motion to dismiss and dismissed Count II of the

amended complaint (deliberate indifference to medical needs) with prejudice, Count III (false

imprisonment under the Fourth and Fourteenth Amendments) without prejudice, and Count V

(improper policy or custom or failure to properly train employees under the Fourth and

Fourteenth Amendments) without prejudice with regard to the alleged Fourteenth Amendment

violation and with prejudice with regard to the Fourth Amendment violation. ECF No. 19.

Plaintiff McRae filed a second amended complaint on April 2, 2014, but Magistrate Judge

Waldor indicated in a subsequent teleconference with parties that the April 2, 2013 order of

dismissal did not permit the filing of an amended complaint one year later.

The remaining Defendants now move for summary judgment with respect to the

remaining claims under Fed. R. Civ. P. 56. ECF No. 41.

NOT FOR PUBLICATION

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. When there is a genuine dispute as to a material fact, the court must view that fact in the light most favorable to the non-movant. *Scott,* 550 U.S. at 380. A "district court c[an] dismiss for failure to state a claim upon motion for summary judgment, but a motion so decided is functionally equivalent to a motion to dismiss." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir. 1977) (citing *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968)). *See also Melo v. Hafer*, 912 F.2d 628, 633 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991)

NOT FOR PUBLICATION

(court may "dismiss[] an action for failure to state a claim on the face of the pleadings on a motion for summary judgment," which is "equivalent to a motion to dismiss").

## DISCUSSION

The New Jersey Prevention of Domestic Violence Act of 1991, codified in part at Title 2C, Chapter 25 of the New Jersey Code of Criminal Justice, states that "a municipal court judge or judge of the Family Part of the Chancery Division of the Superior Court may enter" an ex parte temporary restraining order "when necessary to protect the life, health or well-being of a victim on whose behalf the relief is sought." N.J.S.A. 2C:25-28(f). "If it appears that the plaintiff is in danger of domestic violence, the judge shall . . . order emergency ex parte relief, in the nature of a temporary restraining order." N.J.S.A. 2C:25-28(g). Once a judge has issued a TRO, the statute provides that the TRO, "together with the complaint or complaints, shall immediately be forwarded to the appropriate law enforcement agency for service on the defendant, and to the police of the municipality in which the plaintiff resides or is sheltered, *and shall immediately be served upon the defendant by the police. . . .* " N.J.S.A. 2C:25-28(l) (emphasis added).

When a defendant knowingly violates a temporary restraining order issued under the Prevention of Domestic Violence Act of 1991, the defendant is guilty of the crime of contempt in the fourth degree. N.J.S.A. 2C 25-30, 2C:29-9. "Where a law enforcement officer finds that there is probable cause that a defendant has committed contempt of an order entered pursuant to the provisions of [the Prevention of Domestic Violence Act of 1991], the defendant shall be arrested and taken into custody by a law enforcement officer." N.J.S.A. 2C:25-31.

A contempt action for violation of a TRO may proceed against a defendant who was "not regularly served" under N.J.S.A. 2C:25-28(l), but the defendant must have had "actual knowledge of the restraints imposed" by the TRO at the time he violated it. *State v. Mernar*, 345

6

NOT FOR PUBLICATION

N.J. Super. 591, 594 (N.J. App. Div. 2001) (citation omitted); *see also State v. E.R.*, 2015 WL

2464746, at *3-4 (N.J. App. Div. June 1, 2015) (affirming dismissal of indictment for contempt

for violation of TRO because government presented no evidence to the grand jury that defendant

either (a) was served with the TRO or (b) "had actual knowledge of the specific restraints against

him").

**I.**     **Summary judgment is granted for Defendants with respect to Plaintiff's Fourteenth
          Amendment claims because this action is properly brought under the Fourth
          Amendment.**

As an initial matter, the Court will grant summary judgment in favor of all Defendants

with respect to Plaintiff McRae's Fourteenth Amendment due process claims because these

claims are based on the same allegedly unconstitutional arrest that serves as the basis for his

Fourth Amendment claims.

42 U.S.C. § 1983 provides private citizens with a means to redress violations of federal

law committed by state officials. To state a claim under § 1983, a plaintiff "must establish that

she was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589

F.3d 626, 646 (3d Cir. 2009) (citing *Benn v. Universal Health Sys.*, 371 F.3d 165, 169-70 (3d

Cir. 2004). Plaintiff McRae brings § 1983 claims against the Defendants under both the Fourth

and the Fourteenth Amendments, alleging that his arrest for violating the 2009 TRO was both an

unlawful seizure and a violation of his right to due process "Broadly stated, the Fourth

Amendment prohibits a police officer from arresting a citizen except upon probable cause."

*Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachristou v. City

of Jacksonville*, 405 U.S. 156, 169 (1972)).

NOT FOR PUBLICATION

"[W]hen government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). "Although not all actions by police officers are governed by the Fourth Amendment . . . the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis." *Id.* at 268-69 (citing *Count of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998); *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994)); *see also Washington v. Hanshaw*, 552 F. App'x 169, 172-73 (3d Cir. 2014) (plaintiff alleging unconstitutional arrest was required to bring § 1983 claim under the Fourth Amendment, not the Fourteenth) (citation omitted); *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (affirming grant of summary judgement to defendant on plaintiff's claims under Due Process Clauses of Fifth and Fourteenth Amendments because plaintiff's "claims of excessive force, false arrest, and malicious prosecution are cognizable under the Fourth Amendment. . . . ") (citing *Berg*, 219 F.3d at 268-69).

Because Plaintiff McRae's "due process claim is predicated on damages resulting from an unconstitutional seizure," *Washington*, 552 F. App'x at 173, the claim is properly considered as an alleged violation of the Fourth Amendment, and "due process analysis is inappropriate." *Berg*, 219 F.3d at 268. The Court will grant summary judgment in favor of Defendants for all Fourteenth Amendment claims.

**II.    Plaintiff's Fourth Amendment claims against the Township of Nutley and the Nutley Police must be dismissed because Plaintiff does not allege a basis for imposing municipal entity liability.**

8

NOT FOR PUBLICATION

Plaintiff McRae seeks to hold the Township of Nutley and the Nutley Police Department liable for violating his Fourth Amendment rights. McRae alleges that the Defendant police officers' "failure to properly verify whether service [of the 2009 TRO] had been effectuated," which led to his allegedly unlawful arrest, either was the result of "an improper policy or custom of the Defendants, the City of Nutley and/or the Nutley Police Department, or resulted from a failure to train or improper training of the Defendant police officers." ECF No. 10-1 ¶ 33-37.

To state a claim under § 1983, a plaintiff "must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach*, 589 F.3d at 646. A "municipality cannot be held liable under § 1983 on a *respondeat superior* theory" for the actions of an officer, *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691 (1978), but a municipality can be held liable for unconstitutionally implementing or enforcing "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the officers of that municipality that violated a plaintiff's rights. *Id.* at 690. A plaintiff challenging a policy under *Monell* must "identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984) (citation omitted). A municipality can be held liable under § 1983 and *Monell* for its failure to train police officers adequately if that failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A plaintiff must demonstrate that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the City can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. "[D]eliberately indifferent failure to train is *not* established by (1) presenting evidence of the shortcomings of an individual; (2)

9

NOT FOR PUBLICATION

proving that an otherwise sound training program was negligently administered; or (3) showing,

without more, that better training would have enabled an officer to avoid the injury-causing

conduct." *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1060 (3d Cir. 1991) (citing *City of*

*Canton*, 489 U.S. at 1206) (emphasis in original).

Summary judgment is appropriate here because, despite Plaintiff McRae's assertion that a

"fact issue exists as to the failure to comply with proper procedure and the failure to correct

erroneous information," ECF No. 42-1 at 12, there are no material facts in dispute regarding the

Township of Nutley or the Nutley Police Department's liability. Plaintiff brings a cause of action

under two separate *Monell* theories – "improper policy or custom," and "failure to train" – but he

offers almost nothing in the way of factual allegations or evidence to support either theory.

To prevail under the theory that his constitutional rights were violated as a result of an

"improper policy or custom," Plaintiff McRae must identify an official policy, attribute it to

Nutley, and show a "causal link between the policy and the injury suffered." *Losch*, 736 F.2d at

910. McRae does not identify any policy, instead merely alleging that Nutley officers

demonstrated a general "failure to comply with proper procedure" by "fail[ing] to properly serve

the TRO on Plaintiff" and "subsequently fail[ing] to notice this error in August 2011. . . ." ECF

No. 42-1 at 12. Whether Plaintiff McRae was properly served with the TRO in 2009 is a disputed

fact, but it is not material to this claim. Even assuming that the non-Defendant Officer Teine did

not properly serve him in 2009, Plaintiff McRae does not offer any evidence that the alleged

failure to comply with procedure extended beyond the individual Defendants and incidents

described in the complaint. "A policy cannot ordinarily be inferred from a single instance of

illegality such as a first arrest without probable cause." *Losch*, 736 F.2d at 911 (citations

omitted). Because Plaintiff McRae does not identify any policy that he can attribute to the Nutley

NOT FOR PUBLICATION

Defendants or causally link with the injury claimed, his "improper policy or custom" theory fails as a matter of law.

Plaintiff McRae's claim also fails under the "failure to train" theory. McRae does not allege that the Nutley Police Department failed to train the Defendant officers in any particular matter. In fact, he does not discuss the Nutley Police Department's training practices at all. The only support he offers for this theory is the claim that Defendant Cardinale "admitted that he was unaware of many of the crime information systems used by the law enforcement community," including the National Crime Information Center (NCIC), the State Crime Information Center (SCIC), and the New Jersey Crime Justice Information System (NJCJIS) (collectively, the "crime information systems"). ECF No. 42-1 at 9, 12.[2] Plaintiff McRae presumably implies – but does not actually argue – that Defendant Cardinale was not trained about the crime information systems, that he would have checked the crime information systems if he had been properly trained, that these systems would have contained information about the 2009 TRO not in the Department's TRO book or computer system, and that this information would have caused Cardinale not to seek an arrest warrant. But even if Plaintiff McRae were to make any of these arguments and present any evidence to support them, a "mere showing that a particular officer violated policy, or that better training would have enabled the officer to avoid the injury-causing conduct, is insufficient to establish a municipality's liability under § 1983 for failure to train." *Marable v. West Pottsgrove Tp.*, 176 F. App'x 275, 283 (3d Cir. 2006) (citing *Simmons*, 947 F.2d at 1060). Plaintiff McRae does not establish an "obvious" need for "more or different

---

[2] The deposition transcript cited by Plaintiff McRae actually reflects that, while Defendant Cardinale said he did not know what the acronym "NCIC" stands for, he did know what it is and accurately described it as "basically a database that can be used statewide to look up information such as license plates and, you know, criminal information and stuff like that for police to use." ECF No. 43 at 33:4-14.

NOT FOR PUBLICATION

training" and fails as a matter of law to demonstrate that the Township of Nutley or Nutley Police Department were deliberately indifferent to his rights. Both of his claims must be dismissed.

**III.    Defendant Cardinale is entitled to summary judgment on Plaintiff's Fourth Amendment Claim.**

      **a.   Summary judgment is appropriate for this claim.**

Summary judgment is appropriate with respect to Plaintiff McRae's claim against Defendant Cardinale because there are no material facts in dispute. McRae argues that one disputed fact is material: whether he was served with the 2009 TRO before Defendant Cardinale applied for an arrest warrant on August 5, 2011. ECF No. 42-1 at 8. Plaintiff McRae is correct that if he was not served with the TRO in 2009, as Defendants claim he was, and if he did not have actual notice of the TRO when he allegedly violated it in 2011, he should not have been arrested for contempt. *E.R.*, 2015 WL 2464746, at *3-4; N.J.S.A. 2C:25-28, 25-31. This issue is immaterial to the claim against Defendant Cardinale, however. Cardinale is entitled to qualified immunity because he acted in an objectively reasonable manner in requesting the arrest warrant.[3]

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223,

---

[3] As a threshold matter, Defendants argue that Cardinale is entitled to summary judgment because he "had no interaction with plaintiff and therefore, plaintiff's argument that Cardinale somehow has responsibility for the fact that McRae protested his August 11 [sic] 2011 arrest makes no sense." ECF No. 53 at 8. But courts have long recognized § 1983 liability for officers that prepare warrant affidavits even if they play no part in the subsequent arrest. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 339 (1986); *Berg*, 219 F.3d at 272 ("As a general rule, a government official's liability for causing an arrest is the same as for carrying it out").

NOT FOR PUBLICATION

231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citations omitted). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." *Id.* (citation omitted). "Qualified immunity 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

For a defendant officer who applied for an allegedly unlawful arrest warrant, the question is "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341. Whether an officer requesting a warrant "conducted the investigation negligently is not a material fact." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995). "[T]he issue is not whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.*

13

NOT FOR PUBLICATION

In this case, Defendant Cardinale reasonably believed he had probable cause to request a warrant for contempt. He was informed by the complainant that a TRO issued by the Essex County Superior Court, Chancery Division, Family Part was in effect against Plaintiff McRae at the time McRae was allegedly involved in the August 5, 2011 domestic disturbance incident. He asked another member of the Nutley Police Department to confirm on the Department's "TRO book" and "computer system" that the TRO was "in effect," and the officer did so. Defendant Cardinale stated in his deposition that a TRO's listing as "in effect" meant that the TRO had (a) been issued by a court and (b) served on the defendant. ECF No. 43 at 24:1-9. Because the complainant had reported that Plaintiff McRae was harassing her and Defendant Cardinale believed, based on multiple sources of information, that the 2009 TRO had been issued and served on McRae, he had probable cause to believe that McRae had violated the TRO.

Plaintiff McRae suggests that Defendant Cardinale should not have relied on the complainant or his fellow officer's reports that the 2009 TRO was in effect. But Mr. McRae does not explain why Defendant Cardinale would have any reason to doubt the accuracy of these reports. And, as Defendants argue, the Essex County court file *did* indicate that the TRO was in effect against McRae, even if it should not have been. ECF No. 41 at 12. An officer may rely on a facially valid court order, even if it turns out to be based on a false premise. *See Wolfe v. City of Pittsburgh*, 140 F.3d 236, 240 (3d Cir. 1998) (quoting *Turney v. O'Toole*, 898 F.2d 1470, 1472-73 (10th Cir. 1990) to explain that even an "erroneous order can be valid"). Here, Defendant Cardinale was entitled to rely on the Essex County court's file and his Department's own records, even if all of those records mistakenly indicated that the TRO had been served in 2009.

NOT FOR PUBLICATION

Plaintiff also argues that Defendant Cardinale acted objectively unreasonably by failing to investigate the case properly. He argues that Defendant Cardinale should have reviewed the 2009 TRO when the complainant initially indicated that she was "unaware of the existence of any TRO." ECF No. 42-1 at 13. But Defendant Cardinale could not have reviewed the TRO at that moment because he was also unaware of its existence. And, as Defendants argue, the "fact that [the complainant] had apparently forgotten about the TRO simply does not create a question as to service." ECF No. 53 at 8. Defendant Cardinale had no reason to doubt the TRO's validity.

Plaintiff also argues that Defendant Cardinale's actions were objectively unreasonable because he was unaware of the crime information systems. ECF No. 42-1 at 13. Courts have found arrests objectively unreasonable where an officer had access to law enforcement databases and failed to use them to confirm the legitimacy of a warrant. *See*, e.g., *Blassengdale v. City of Philadelphia*, 2012 WL 4510875, at *5 (E.D. Pa. Sept. 28, 2012) (denying motion to dismiss claim for false arrest where arresting officer "had access to law enforcement databases and in the three month interval between the indictment and arrest . . . may have inquired further" and discovered that defendant was incarcerated when the crime he was charged with occurred and therefore could not have been responsible). As discussed, though, Plaintiff fails to demonstrate the relevance of the crime information systems. He does not allege (a) that a reasonable officer would have checked these systems, (b) that the systems contained any additional information about the TRO, or (c) that this information would have led Cardinale to believe that McRae did not have actual notice of the TRO's protections. Even if Plaintiff made all these arguments and presented adequate evidence to support them, Defendant Cardinale's actions would not necessarily be unreasonable. *See Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 203 (3d Cir. 2011) (defendant arresting officer entitled to qualified immunity even though he was aware of

NOT FOR PUBLICATION

and had access to CJIS, which would have indicated that warrant had already been executed and plaintiff had been arrested once earlier that day).

Defendant Cardinale might have seen the missing return of service signature if he had conducted a more extensive investigation and reviewed a copy of the 2009 TRO himself. But, because "actual knowledge of the restraints imposed," and not "regular service," is required for a criminal defendant to be arrested and convicted for contempt, *Mernar*, 345 N.J. Super. at 594, Defendant Cardinale's search warrant application would not necessarily have been unreasonable even if he *had* seen the missing return of service signature. *See State v. Huttman*, 2006 WL 3053501, at *2 (N.J. App. Div. Oct. 30, 2006) (affirming defendant's contempt conviction for violating Final Restraining Order ("FRO") even though "the 'return of service' section of the FRO was blank at the time of trial, and . . . there was no specific testimony that he had been served with the FRO before his . . . encounter with [the complainant].") (citing *Mernar*, 345 N.J. Super. At 594). In any event, even if Defendant Cardinale failed to conduct a "professionally executed investigation" of Plaintiff, Cardinale reasonably believed he had probable cause to seek an arrest warrant based on the Essex County court and Nutley Police Department records. He requested the warrant based on "information [that] would warrant a reasonable person to believe that an offense has been . . . committed," *Orsatti*, 71 F.3d at 484, so he is immune from suit.

NOT FOR PUBLICATION

**IV.     Defendant Bassett is not entitled to Summary Judgment on Plaintiff's Fourth Amendment Claim.**

Summary judgment is not appropriate with respect to the Fourth Amendment claim against Defendant Bassett because a material fact remains in dispute: whether Plaintiff presented Defendant Bassett with evidence that he had first been served with the TRO on August 10, 2011 before he was arrested that day.

Courts "have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant." *Berg*, 219 F.3d at 273 (citation omitted). A facially valid warrant establishes probable cause for an arrest and indicates that officer's arrest was objectively reasonable. *See generally Young v. City of Hackensack*, 178 F. App'x 169, 171-72 (3d Cir. 2006) (affirming grant of summary judgment to defendants in false arrest § 1983 case on basis of probable cause and qualified immunity where warrant "appears on its face to be valid"); *see also Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'") (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)); *Illinois v. Krull*, 480 U.S. 340, 367 (1987) ("*Leon* . . . instructs courts that police officers may rely upon a facially valid search warrant.").

Plaintiff McRae does not dispute that Defendant Bassett relied on a warrant to arrest him, nor does he argue that the warrant was facially invalid. As discussed, Defendant Cardinale had probable cause to seek the warrant, and Plaintiff does not dispute that a judge reviewed Cardinale's complaint and found probable cause to issue the warrant. *See* ECF No. 41 Ex. J. –

17

NOT FOR PUBLICATION

Complaint-Warrant. Defendants also argue, and Plaintiff McRae does not deny, that Defendant

Bassett confirmed that McRae was listed as a New Jersey Wanted Person before making the

arrest. ECF No. 41 at 16. It is clear that Defendant Bassett *initially* had probable cause to arrest

Mr. McRae.

But Defendants do not address a material fact raised by the Plaintiff: that McRae

allegedly arrived at the Nutley Police Department on August 10 carrying a copy of the TRO

served upon him earlier that day, and that McRae allegedly told Defendant Bassett he had just

been served with the TRO for the first time. ECF No. 42-1 at 4.

Plaintiff argues that he cast Defendant Bassett's probable cause into question by

presenting Bassett with evidence that he had just been served with the TRO, and that Bassett was

"grossly unprofessional and unreasonable and fell below proper standards of conduct" by

arresting him anyway. ECF No. 42-1 at 4; Ex. F – Dep. Antoine McRae, ECF No. 46 at 152:15-

154:19.

Ordinarily, a police officer is not required to look beyond a facially valid warrant to

confirm probable cause, even if the target of the warrant protests the arrest. *Baker v. McCollan*,

443 U.S. 137, 145-46 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required

by the Constitution to investigate independently every claim of innocence. . . . ").

But "an apparently valid warrant does not render an officer immune from suit if his

reliance on it is unreasonable in light of the relevant circumstances." *Berg*, 219 F.3d at 273.

These circumstances include "other information that the officer possesses or to which he has

reasonable access, and whether failing to make an immediate arrest creates a public threat or

danger of flight." *Id.* (remanding to district court for consideration of qualified immunity issue

and noting that arresting constable refused to look at release documents demonstrating that

18

NOT FOR PUBLICATION

arrestee [for violating parole] was no longer on parole); *see also Peña-Borrero v. Estremeda*, 365 F.3d 7, 13 (1st Cir. 2004) ("While the officers arguably were simply negligent in failing to check on the warrant before they acted on it, following through on the arrest and detention once confronted with appellant's documents [showing that he had already been arrested and released on the same warrant earlier that day] reflected a much more deliberate disregard for whether the warrant remained valid."); *Gonzalez v. Cape May County*, 2015 WL 1471814, at *9 (D.N.J. March 31, 2015) (whether arresting officer's conduct was objectively reasonable despite facially valid warrant was genuine issue of material fact because plaintiff's family gave arresting officer information that contradicted warrant and there were no "exigent circumstances" preventing officer from checking the inconsistencies before making an arrest).

Because a defendant cannot be arrested for violating a TRO without having "actual knowledge of the restraints imposed" by the TRO, *Mernar*, 345 N.J. Super. at 594, Plaintiff McRae's August 10 copy of the TRO and claim that he had just been served for the first time would both contradict the validity of Defendant Bassett's warrant and render an arrest, without at least "tak[ing] additional time to investigate Plaintiff's claims," *Gonzalez*, 2015 WL 1471814, at *9, potentially unreasonable. Nor do Defendants argue that any "exigent circumstances" required Defendant Bassett to arrest Plaintiff McRae immediately without investigating further. *Berg*, 219 F.3d at 273.

Whether Plaintiff McRae told Defendant Bassett that he had just been served with the TRO and attempted to show him the August 10 copy is an issue of material fact, and summary judgment is inappropriate for this claim. *Harris*, 550 U.S. at 380.

NOT FOR PUBLICATION

**V.     Defendant Strus is entitled to summary judgment on Plaintiff's Fourth Amendment claim.**

Defendant Strus is entitled to summary judgment on Plaintiff McRae's Fourth

Amendment claim against him. There are no material facts in dispute regarding Defendant

Strus's actions. He neither applied for the allegedly invalid warrant nor arrested Plaintiff McRae.

Instead, a report cited by both Plaintiff and Defendants indicates that, on August 8, 2011,

Defendant Strus faxed a copy of the warrant and complaint to the Linden and Jersey City Police

Departments, sent a Speedy Bail request to the Essex County Sheriff's Office, and placed "[a]ll

related documents and information" into an evidence bag. ECF No. 41 Ex. M – Supp.

Investigation Report.

Plaintiff McRae does not allege that any of these actions directly violated his

constitutional rights or led to his arrest in any way. Instead, he argues that it "would appear from

that report that the documents would be subject to at least a tertiary review by the office for

purpose of preparing the evidence bag," ECF No. 42-1 at 17. McRae apparently suggests that

Defendant Strus was obligated to review the 2009 TRO, discover it had not been properly

served, and report the error. Plaintiff McRae does not allege that the "related documents and

information" in the evidence bag included a copy of the TRO that Defendant Strus could have

reviewed, nor does he give any basis for his claim that the documents "would be subject to at

least a tertiary review." *Id.*

Regardless, to repeat, a police officer is entitled to rely on a facially valid warrant in the

absence of information that renders reliance unreasonable. *Krull*, 480 U.S. at 367; *Young*, 178 F.

App'x. at 171-72. Plaintiff does not allege that Defendant Strus had any reason to doubt the

validity of the warrant he faxed to the other police departments. It follows that Defendant Strus's

NOT FOR PUBLICATION

actions, to the extent they caused any violation of Plaintiff's rights, are objectively reasonable and entitled to qualified immunity.

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. Because Plaintiff McRae alleges an unlawful arrest under the Fourth Amendment, due process analysis is inappropriate and summary judgment is granted for Defendants on all Fourteenth Amendment claims. With respect to Plaintiff's Fourth Amendment claims, Defendants' motion for summary judgment is granted for the Township of Nutley, the Nutley Police Department, Isaah Cardinale, and David Strus and denied for Andrew Bassett. An appropriate order follows.

DATE: 28 Octuber 2015

William H. Walls
Senior United States District Court Judge

21